JOSEPH WM. KRUCHEK #010332
ANDREW J. RUSSELL #021307
JACOB L. SHERRARD #021594
KELLEY E. BRADEN #027167
KUTAK ROCK LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2742
(480) 429-5000
Facsimile: (480) 429-5001
Joe.kruchek@kutakrock.com
Jake.sherrard@kutakrock.com
Kelley.braden@kutakrock.com

*Attorneys for Petitioning Creditor
RES-AZ HP160, LLC*

KEITH L. HENDRICKS #12750
JOSHUA T. GREER #25508
MOYES SELLERS & HENDRICKS
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
(602) 604-2169
khendricks@law-msh.com
jgreer@law-msh.com

*Attorneys for Petitioning Creditors Nocit Loan LLC
and Citno Loan LLC*

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE<br><br>STEPHEN A. KOHNER,<br><br>Debtor. | Chapter 7<br><br>Involuntary Proceeding<br><br>Case No.: 2:13-02159<br><br>**EMERGENCY MOTION PURSUANT TO 11 U.S.C. §303(g) FOR INTERIM APPOINTMENT OF TRUSTEE DURING GAP PERIOD OR IN THE ALTERNATIVE TO PROHIBIT DEBTOR FROM USING, ACQUIRING OR DISPOSING OF PROPERTY DURING GAP PERIOD** |

Petitioning creditors RES-AZ HP160, LLC ("**HP160**"), and Nocit Loan LLC ("**Nocit**") and Citno Loan LLC ("**Citno**"), through undersigned counsel (HP160 and Nocit and Citno shall be referred to collectively as "**Petitioning Creditors**"), pursuant to 11 U.S.C. §§303(f) and (g), request this Court enter an order appointing an interim trustee to preserve the property of the estate and to prevent loss to the estate so that the interim trustee during the period from filing the involuntary petition to entry of the order for relief (the "**Gap Period**") shall take possession of the property of the Debtor, Stephen A. Kohner ( "**Kohner**" or "**Debtor**"), and operate any business of the Debtor. In the alternative, Petitioning Creditors request that the Court enter an order prohibiting Debtor

during the Gap Period from using, acquiring or disposing of his property as otherwise permitted pursuant to 11 U.S.C. §303(f). This Emergency Motion Pursuant to 11 U.S.C. §303(g) for Interim Appointment of Trustee During Gap Period or in the Alternative to Prohibit Debtor from Using, Acquiring or Disposing of Property During Gap Period (the "**Motion**") is supported by the following Memorandum of Points and Authorities, the exhibits attached hereto and the involuntary petition filed in this case.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Background

Petitioning Creditors collectively hold non-contingent, liquidated, undisputed claims evidenced by three separate judgments totaling $107,267,952.11.[2] To collect on HP160's judgment, in September 2012, HP160 began obtaining and serving writs of garnishment and applications for charging orders on multiple entities owned in whole or in part by, related to, or doing business with the Kohners. In November 2012, HP160 began obtaining and serving *subpoenas duces tecum* on multiple Kohner-related entities and entities unrelated to the Kohners, such as various banks.

As part of its request for charging orders, HP160 asked the court to issue an Order to Show Cause ("**OSC**"). The court did so, and scheduled a return hearing for February 8, 2013. The Kohners objected to several of the garnishment writs, and the court scheduled a hearing on that objection for January 10, 2013. The parties then stipulated to reschedule that hearing, combining it with the February 8th OSC hearing. As of that date, in all likelihood, HP160 would have become the assignee of the Kohners' membership interests in the aforementioned LLCs. *See* A.R.S. § 29-655.[3]

---

[1] The involuntary petition against Stephen A. Kohner was filed on February 19, 2013. Immediately after the filing of the involuntary filing against Mr. Kohner, Petitioning Creditors filed an involuntary petition against his wife, Patricia L. Kohner (Mr. and Mrs. Kohner shall be referred to as the "**Kohners**".) The Kohners are jointly and severally obligated on judgments obtained by Petitioning Creditors. Also, being filed is a motion for joint administration of both these cases to be administered in the lower case number which is that of the involuntary filed against Mr. Kohner, No. 2:13-bk-02159. Petitioning Creditors have filed this Motion as well in the involuntary filed against Mrs. Kohner.

[2] Nocit and Citno's judgment entered by the Maricopa County, Arizona Superior Court on December 20, 2012, is in the amount of $24,462,167.52 in favor of Nocit and $61,985,922 in favor of Citno. HP160's judgment, stipulated to by Kohner, and entered by the Maricopa County, Arizona Superior Court on April 25, 2012, is in the amount of $20,819,862.59. True and correct copies of the judgments held by Petitioning Creditors are attached hereto as **Exhibit "A"**.

[3] In the two months since Nocit and Citno obtained their judgments, Nocit and Citno recorded their judgments in all fifteen counties in Arizona. Nocit and Citno also retained a private investigator to investigate the assets held by Debtor

To Petitioning Creditors' stunned surprise, at approximately 4:55 p.m. (Arizona time) on January 30, 2013, attorney Dow Glenn Ostlund, representing Defendant RLK Partnership, sent HP160's counsel and Nocit and Citno's counsel copies of a "Notice of Public Sale of Property" and the classified section of a newspaper dated Monday, January 28, 2013, showing publication of the Notice of Sale. True and correct copies of Mr. Ostlund's email with the attachments are attached hereto as **Exhibit "B"**. The Notice of Sale claims that RLK Partnership "acquired" two judgments against the Kohners, judgments that had initially been obtained by Towne Bank (the "**Towne Bank Judgments**") in CV2008-033022.[4] The Notice of Sale then claims that the Kohners and RLK Partnership entered into a settlement agreement (the "**RLK-Treese Trust-Kohner Settlement Agreement**") whereby the Kohners transferred multiple assets to RLK Partnership, <u>including the Kohners' interests in the very entities against which HP160 sought the charging orders</u>. *See generally* Notice of Sale, § A. The January 30th e-mail containing the Notice of Sale did not include a copy of the RLK-Treese Trust-Kohner Settlement Agreement referenced in that Notice.

According to the Notice of Sale, RLK Partnership was going to sell the Kohners' assets at a public sale on February 7, 2013. That date was not a coincidence – the court in CV2011-000185, the case in which HP160 obtained its judgment, was to consider HP160's request for charging orders against those same assets *the very next day, February 8, 2013*. Thus, the Kohners, through this scheme, were attempting to dispose of Kohners' assets the day before HP160 was to obtain charging orders against several of those same interests.

Why would RLK Partnership want to acquire judgments of Towne Bank against Kohners, but then do nothing to pursue those judgments? And why would Kohners transfer multiple assets to that company? The ownership of RLK Partnership answers those questions. The general partner of RLK Partnership is "RLK 3000, L.L.C." *See* Arizona Secretary of State's website page for RLK Partnership, attached hereto as **Exhibit "C"**. RLK 3000, L.L.C. is owned by Ronald L. Kohner, Kathleen Kohner, Andrew Kohner, and Kellie Kohner. *See* Arizona Corporation Commission website page for RLK 3000, L.L.C., attached hereto as part of **Exhibit "C"**. Ronald L. Kohner,

---

and are in the process of localizing the Debtor's assets subject to their judgments.
[4] The court's docket for CV2008-033022 shows that, whoever owns those Judgments, no entity has initiated collection proceedings since the Judgments were entered in March 2010.

Kathleen Kohner, Andrew Kohner, and Kellie Kohner are family members of Kohner, with Ronald L. Kohner being Stephen Kohner's brother.

On January 31, 2013, the day after delivery of the Notice of Sale, RLK Partnership filed a Motion to Intervene and Objection to Plaintiff's Application for Garnishment Judgment and Charging Orders. That Motion included a copy of an Amended and Restated Settlement and Forbearance Agreement but not the purported settlement agreement referenced in the Notice of Sale. Only after request via email to counsel for RLK Partnership, counsel for RLK Partnership on February 1, 2013, provided a copy of the Settlement Agreement, which was actually among not only RLK Partnership, Kohners and SAK Family Limited Partnership but also Stephen A. Kohner, as trustee of the Sandra Treese Irrevocable Trust (the "**RLK-Treese Trust-Kohner Settlement Agreement**"). A true and correct copy of the RLK-Treese Trust-Kohner Settlement Agreement provided to counsel for HP160 is attached hereto as **Exhibit "D"**. The RLK-Treese Trust-Kohner Settlement Agreement purports to transfer to RLK Partnership all of Kohners' interest in, apparently most, if not all, his and his wife's non-exempt assets, other than personal belongings, including their interests in all the entities against which HP160 sought charging orders and/or garnishments. *See* RLK-Treese Trust-Kohner Settlement Agreement, § 11(B).[5] Additionally, the RLK-Treese Trust-Kohner Settlement Agreement purports to transfer multiple high-value assets to Stephen Kohner, as trustee of the Sandra Treese Irrevocable Trust (the "**Treese Trust**") including: (a) cash held by various Kohner-related entities totaling $1,487,162; (b) the assignment of 17 promissory notes owed by multiple individuals, apparently, based on the surnames, unrelated to Kohner, with face amounts recited as totaling ballpark $1,759,000; (c) accounts receivable held by First American Title under Subdivision Trust No. 8645 for the benefit of K-3 Holdings, LLC estimated to be $107,000; (d) membership interest of Arizona Oil & Gas Investments, L.L.C. in Sweetwater Oil, L.L.C.; and (e) common stock of Starlight Water Company, Inc., an Arizona corporation that is owned by SPK-07, LLLP. Despite those alleged transfers, the RLK-Treese Trust-Kohner Settlement Agreement allows Stephen Kohner to remain as manager of several of the LLCs in question. *See id.*, § 9(c).

---

[5] The RLK-Kohner Settlement Agreement stipulates that the value of those interests is $5,500,000, but provides no basis for such valuation. *See id.* at § 12(a).

The signatures on the RLK-Treese Trust-Kohner Settlement Agreement are not notarized, and the Agreement is undated. Thus, there is no way to know when Kohners executed that Agreement. However, according to the RLK-Treese Trust-Kohner Settlement Agreement's terms, "[t]he effective date for the transfer and performance of the Parties shall be January 31, 2013." *See* Exhibit 8, § 16.

Immediately upon learning of the purported transfers of assets from Kohners to RLK Partnership and the sale noticed by RLK Partnership, HP160 took steps to prevent the sale from proceeding. On February 5, 2013, in Maricopa County, Arizona Superior Court, before Judge Fenzel, HP160 filed a complaint asserting claims for fraudulent conveyance and preliminary and permanent injunctions against the Kohners, RLK Partnership, SAK Family Limited Partnership ("**SAK Partnership**")[6] and the Treese Trust. A true and correct copy of the complaint is attached hereto as **Exhibit "F"**. On February 5, 2013, along with the complaint, HP160 filed an Application for Preliminary Injunction (a true and correct copy is attached hereto as **Exhibit "G"**), a Motion for Temporary Restraining Order (with Notice) (a true and correct copy is attached hereto as **Exhibit "H"**), and the Declaration of Michael Strickland in Support of Plaintiff's Motion for Temporary Restraining Order (with Notice) (a true and correct copy is attached hereto as **Exhibit "I"**). In addition, in that proceeding, Citno and Nocit filed a motion to intervene and a complaint in intervention.

---

[6] SAK Family Limited Partnership's general partner is SAK Investments, L.L.C. See a true and correct copy of printout from the Arizona Secretary of State's website attached hereto as part of **Exhibit "E"**. The manager and members of SAK Investments, L.L.C. ("**SAK Investments**") were, up to filings made as of January 31, 2013, by counsel for Kohner, Gammage & Burnham, and as set forth in the operating agreement for that entity, Stephen Kohner and STM Holdings. See true and accurate copy of the operating agreement for SAK Investments attached hereto as part of **Exhibit "E"**. The manager and members for SAK Investments currently showing in the ACC website are Shawn Kohner, manager, and RLK Family Limited Partnership and STM Holdings, L.L.C., members. See true and correct printout from the Arizona Corporation Commission (the "**ACC**") website and copy of the amended and restated articles of organization for SAK Investments included as part of **Exhibit "E"**. The manager and members of STM Holdings, again up to filings made as of January 31, 2013 by counsel for Kohner, Gammage & Burnham, and as set forth in the operating agreement for that entity, were Stephen Kohner, manager, and Stephen Kohner, Shawn Kohner, Timothy Kohner and Stephanie Kohner, members. See a true and accurate copy of the operating agreement for that entity included as part of **Exhibit "E"**. The manager and members currently showing in the Arizona Corporation Commission website are Shawn Kohner, manager, and RLK Partnership, Shawn Kohner, Timothy Kohner and Stephanie Kohner, members. See printout from the Arizona Corporation Commission website and copy amended and restated articles of organization for SAK Investments included as part of **Exhibit "E"**.

J. Fenzel conducted the first hearing on the Motion for Temporary Restraining Order on February 5, 2013 and entered a Temporary Restraining Order (with Notice) (the "**TRO**") (a true and correct of the TRO is attached hereto as **Exhibit "J"**). J. Fenzel also ordered a return hearing for February 12, 2013. On February 11, 2013, HP160's counsel served requests for production on all defendants in the state court action and, further suggested that the parties agree to a schedule for a hearing on the preliminary injunction in 60 to 90 days in order to provide the parties time for discovery and other preparation. The defendants rejected that proposal. At the February 12, 2013 hearing, Kohners' counsel, counsel for the Treese Trust and counsel for RLK appeared and insisted that additional hearings be held on the TRO. J. Fenzel then set further hearings for February 20 and 21, 2013.

In the state court action, RLK Partnership asserted that, in July 2010, it purchased for approximately $440,000 two judgments obtained on behalf of Towne Bank, a failed financial institution and simply is enforcing its rights under that judgment having been able to reach the Kohners first. The court dockets in the case in which the judgments were obtained show that from the date of entry of the judgments, absolutely no action has been taken to enforce the judgments. RLK Partnership's assertion is that, from July 2010, it entered at least one, if not two, forbearance agreements with Kohners and SAK Partnership, the other judgment debtor owing on its judgments, and that the forbearance agreements provided for RLK Partnership to forbear from execution on the judgments unless it deemed itself insecure. A true and correct copy of one of the forbearance agreements provided by counsel for RLK Partnership, the Amended and Restated Settlement and Forbearance Agreement dated February 1, 2012, is attached hereto as **Exhibit "K"** (the "**February 2012 RLK-Kohner Forbearance Agreement**"). In the state court action, RLK further asserted that, because of HP160's enforcement of its judgment, RLK Partnership deemed itself insecure and was simply the first to strike a deal with sKohner in satisfaction of its judgment. So, too bad, so sad for Petitioning Creditors.

RLK Partnership fails, however, to acknowledge that multiple indicia of fraudulent transfers exist in its dealings with Kohners and that the circumstantial evidence as noted above, in Petitioning Creditors' view, clearly establishes collusion between RLK Partnership and Kohners to defraud

6

Kohners' other creditors by keeping all of Kohners' assets within the family control of Stephen A. Kohner's brother, Ronald, and Stephen A. Kohner's children, Shawn, Timothy and Stephanie and, for that matter, Stephen A. Kohner, himself, as trustee of the Treese Trust. Such evidence clearly shows a scheme by which Stephen A. Kohner and his wife will continue to enjoy the benefit of the assets "transferred" in "partial satisfaction" of the Towne Bank judgments held by RLK Partnership.

The Treese Trust's argument concerning the *bona fides* of the cash and other assets it received is similarly lacking. The RLK-Treese Trust-Kohner Settlement Agreement recites that Treese Trust paid $6.7 million in cash in return for an ownership interest in certain partnership units in SPK-07, LLLP and K-3 Holdings as part of a plan to obtain asset protection as well as estate tax and generation skipping tax exclusion with respect to the assets of the Treese Trust which was created for the benefit of the Kohner children. See RLK-Treese Trust-Kohner Settlement Agreement at page 2, paragraphs 3.d and e. The original articles of organization of K-3 Holdings, LLC show that Stephen Kohner was the manager and the only member listed as having an interest of more than 20% was SAK-07, LLC. The member holding the interest larger than 20% then changed as set forth in an Amendment to the Articles of Organization for K-3 Holdings, LLC to the Treese Trust. See true and correct copies of organizational documents for K-3 Holdings attached hereto as **Exhibit "L"**. SAK-07, LLC is a Delaware limited liability company. Delaware does not require in connection with limited liability company filing that the members and managers be made a matter of public record. Accordingly, investigation is ongoing. However, upon information and belief, in part based on the provisions of the RLK-Treese Trust-Kohner Settlement Agreement, Petitioning Creditors believe SAK-07, LLC, was owned either directly or indirectly and controlled either directly or indirectly by Stephen A. Kohner. See the RLK-Treese Trust-Kohner Settlement Agreement at page 1, the identification of the parties, and page 2, paragraphs 3 – 8. In accordance with the RLK-Treese Trust-Kohner Settlement Agreement, the Treese Trust was "…entitled to recover what remains of its capital contribution to SPK-07, LLLP and K-3 Holdings, LLC by having its interests in both SPK-07 LLLP and K-3 Holdings, L.L.C (*sic*) redeemed in return for distributions by [SAK-07 Trust, SAK-II78 Trust and PLK-07 Trust] of entities controlled by [SAK-07 Trust, SAK-II78 Trust and PLK-07 Trust], including SPK-07, LLLP and K-3 Holdings, L.L.C. In

redemption of its interests in both entities, [the Treese Trust] shall be distributed the assets referred to in Section 5 hereinbelow." See the RLK-Treese Trust-Kohner Settlement Agreement at page 3, paragraph 4. The RLK-Treese Trust-Kohner Settlement Agreement defines SAK-07 Trust, SAK-II78 Trust and PLK-07 Trust as the "Claimed Affiliates". Based on the RLK-Treese Trust-Kohner Settlement Agreement, upon information and belief, Kohners owned, controlled and directed, directly or indirectly, the Claimed affiliates, which in turn owned, controlled and directed, all the entities whose interests were purportedly transferred to the Treese Trust and RLK and whose cash and promissory notes and other assets were purportedly transferred to the Treese Trust.

The Amended and Restated Sandra Treese Irrevocable Trust Agreement with an effective date of December 31, 1992, provides additional compelling evidence of the scheme to retain all Kohners' assets for the benefit of Kohners and their family. A true and correct copy of the Treese Trust trust agreement is attached hereto as **Exhibit "M"** (the "**Treese Trust Agreement**"). The Treese Trust Agreement provides as follows: (a) the beneficiaries are, Petitioning Creditors believe, the adult children of Stephen A. Kohner, who are Shawn Stephen Kohner born March 5, 1974, Timothy Michael Kohner born April 11, 1977 and Stephanie Marie Kohner born August 24, 1983 (the Treese Trust Agreement at Article II); and (b) the trustee of the Treese Trust is established at Article IV, Section 4.1, which provides in pertinent part, as follows:

> **Initial Trustee.** STEPHEN A. KOHNER shall serve as the initial Trustee hereunder. If STEPHEN A. KOHNER is unable to serve or ceases to serve as Trustee for any reason, then JAMES F. POLESE, ESQ. shall serve as successor trustee. If neither STEPHEN A. KOHNER nor JAMES F. POLESE, ESQ. are willing or able to serve, then RONALD L. KOHNER shall be nominated to serve as the successor trustee.

Just like the RLK Partnership, the Treese Trust fails to acknowledge that multiple indicia of fraudulent transfers exist in its dealings with Kohners and the circumstantial evidence as noted above, in Petitioning Creditors' view, clearly establishes collusion between RLK Partnership, the Treese Trust and Kohners to defraud Kohners' other creditors by keeping all of Kohners' assets within the family control of Stephen A. Kohner's brother, Ronald, and Stephen A. Kohner's children, Shawn, Timothy and Stephanie with Stephen A. Kohner as trustee of the Treese Trust. Such evidence clearly shows a scheme by which Stephen A. Kohner and his wife will continue to

enjoy the benefit of the assets "transferred" in satisfaction of the Towne Bank judgments held by RLK Partnership and in "redemption" of the Treese Trust's interests that it purchased in SPK-07 LLLP and K-3 Holdings, L.L.C.

Further, without any need to address all the evidence of fraudulent transfers, the transfers to both RLK Partnership and the Treese Trust are undisputedly preferences pursuant to 11 U.S.C. § 547. Moreover, the evidence above certainly will support causes of action against RLK Partnership and the Treese Trust for subordination of their claims pursuant to 11 U.S.C. § 510. Immediate appointment of an interim trustee is certainly in the interests of the estate to advance those claims as soon as possible.

**II. Argument**

**A.     Appointment of a Trustee Pursuant to 11 U.S.C. § 303(g) Is Necessary to Prevent Kohner from Disposing of Kohner's Assets before Entry of the Order for Relief.**

Section 303(g) provides, in pertinent part, that:

> [a]t any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g). It is well established that when a debtor has engaged in transfers with an intent to hinder, delay, or defraud creditors, including transfers to family member-insiders and that deplete estate assets, the Court's appointment of an interim trustee pursuant to Section 303(g) is appropriate. *See In re The Centre for Management and Technology, Inc.*, No. 07-19486-NVA, 2007 WL 3197221, at *6-7 (Bankr. D. Md. 2007) (appointing an interim trustee under Section 303(g) because, among other things, assets were at risk of being lost or removed); *In re James Plaza Joint Venture*, 62 B.R. 959, 960-63 (Bankr. S.D. Tex. 1986) (appointing an interim trustee under Sections 303(g) and 701 because of the danger of asset dissipation by the debtor); *In re Professional Accountants*

*Referral Services, Inc.*, 142 B.R. 424, 429-30 (Bankr. D. Colo. 1992) (finding that "the appointment of a trustee during the gap period . . . is authorized and proper under 11 U.S.C. §§ 1104(a)(1), 105 and, *by analogy, 303(g)*" because "there could be serious and irreparable injury without the forthwith appointment of an independent, disinterested, and competent trustee.") (emphasis added); *In re Russell*, 60 B.R. 42, 47 (Bankr. W.D. Ark. 1985) (appointing an interim trustee under the analogous Section 1104 because the debtor's "deal [i.e., the sale of substantial assets] was structured . . . to avoid claims of creditors."); *In re Tel-Net Hawaii, Inc.*, 105 B.R. 594, 595 (Bankr. D. Hawaii 1989) (appointment of a trustee under the analogous Section 1104 was appropriate because the debtor corporation was controlled by its principal shareholder and potential preferential transfers had been made to pay the shareholder's guaranteed liabilities); *In re Haupt Bros.*, 153 F. 239 (S.D.N.Y. 1907)[7]; *In re Fixen & Co.*, 96 F. 748, 753 (C.D. Cal. 1899).

As set forth above, this is precisely the case here. If Kohner is allowed to continue to use, acquire and dispose of his assets, as permitted by 11 U.S.C. §303(f), the risk of loss to the estate is immense. Kohner has already established that he has no compunction concerning fraudulently transferring his assets to family members with the actual intent to hinder, delay and defraud his other creditors. As set forth above, the purported transfers of his assets to members of his own family, and those family members then seeking to sell the assets immediately, establish that Kohner cannot be left in control of his assets, whatever those may now be, without material risk of loss. If permitted, undoubtedly, whatever is left of Kohner's assets will disappear during the Gap Period and, upon entry of the order for relief in this case, the trustee who is then appointed will be unable to find and obtain those assets, much less the assets fraudulently transferred pre-petition and subject to preference claims.[8]

---

[7] "[P]re-Code cases provide useful guidance for appointing interim trustees under present law [i.e., Section 303(g) and Fed. R. Bankr. P. 2001]." 9 COLLIER ON BANKRUPTCY ¶ 2001.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[8] The solvency of Kohner also cannot seriously be disputed. Clearly, Kohner has not been paying his debts when and as

10

Accordingly, Kohners, their children, Ronald Kohner and his children will have succeeded in rendering all the assets of Kohners beyond the reach of their creditors. Because the potential damage from Kohner's actions is so great, and because at this point Petitioning Creditors cannot fathom what other "creative" maneuvers Kohner is pursuing to hide other assets he and his wife may own, an interim trustee is vital and absolutely necessary to prevent further irreparable damage. Thus, and pursuant to the authorities set forth herein, this Court should appoint an interim trustee pursuant to Section 303(g).

Petitioning Creditors have a substantial likelihood of success on the merits of their claims pursuant to 11 U.S.C. §548 and the Uniform Fraudulent Transfer Act. A transfer is fraudulent as to existing creditors under both statutory schemes when made with actual intent to hinder, delay or defraud creditors, or if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time. 11 U.S.C. §§ 548(a)(1)(A) and (B) and A.R.S. §§ 44-1004(A)(1) and 44-1005. Because the parties to fraudulent transfers rarely admit "actual intent," such intent may be proven by circumstantial evidence. *See Barclay, Successor Trustee v. Mackenzie (In re AFI Holding, Inc.)*, 525 F.3d 700, 704 (9th Cir. 2008) ("We allow 'a finding of fraudulent intent under section 548(a)(1) . . . on the basis of circumstantial evidence.'") (quoting *Hayes, Trustee v. Palm Seedlings Partners-A (In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 534 (9th Cir. 1990)); *see also Southern New England Telephone Co. v. Sahara & Arden, Inc.*, No. 2:09–cv–00534–RCJ–PAL, 2010 WL 2035330, at *3 (D. Nev. May 24, 2010) ("'Traditionally, the intent required for actual fraudulent transfers is established by circumstantial evidence, since it will be the rare case in which the debtor testifies under oath that he or she intended to defraud creditors.'") (quoting *Leonard*,

---

they come due. Kohner has owed Petitioning Creditors over $107,000,000 and made no payment whatsoever. Further, upon information and belief, Kohner assets are so far less than their outstanding debts of only Petitioning Creditors that their balance sheet insolvency is a virtual certainty.

Case 2:13-bk-02159-DPC    Doc 3    Filed 02/19/13    Entered 02/19/13 15:15:48    Desc
Main Document    Page 11 of 16

*Chapter 7 Trustee v. Coolidge (In re Nat'l Audit Defense Network)*, 367 B.R. 207, 219-20 (Bankr. D. Nev. 2007)); *see, e.g., Gerow v. Covill*, 192 Ariz. 9, 17, 960 P.2d 55, 63 (App. 1998). The Uniform Fraudulent Transfer Act, as adopted in Arizona, contains a non-exclusive list of factors for courts to consider in determining whether Kohner intended to hinder, delay, or defraud a debtor's creditors. *See* A.R.S. § 44-1004(B). Numerous such "badges of fraud" apply to Kohner's actions: (a) The purported transfers of Kohner's assets were to "insiders" – here, immediate family members and to Stephen A. Kohner himself, albeit in his capacity as trustee of the Treese Trust. *See* A.R.S. § 44-1004(B)(1). A family member is considered an insider of the debtor. *See* 11 U.S.C. § 101(31)(A)(i) (defining the term "insider" to include, among other things, a "relative of the debtor" if the debtor is an individual); *Merchant Transaction Systems, Inc. v. Necela, Inc.*, No. CV 02–1954–PHX–MHM, 2010 WL 382886, at *2 (D. Ariz. Jan. 29, 2010) (a family member is an insider for fraudulent transfer purposes); *see also In re Roca*, 404 B.R. 531, 544 (Bankr. D. Ariz. 2009) (a family member, here the debtor's mother, qualified as an insider for fraudulent transfer purposes); *Schofield-Johnson v. United States of America (In re Schofield-Johnson, LLC)*, 462 B.R. 539, 543 (Bankr. M.D. N.C. 2011) (same); *Gerow*, 192 Ariz. at 17, 960 P.2d at 63. (b) Despite the alleged transfers, Stephen Kohner retained control of at least six of the entities in question. *See* A.R.S. § 44-1004(B)(2); *see also* RLK-Kohner Settlement Agreement, § 9(C). (c) The purported transfer by Kohner was disclosed to HP160 only at the very last minute. *See* A.R.S. § 44-1004(B)(3). The February 8th hearing on HP160's applications for charging orders was scheduled in early January. Kohner published notice of the public sale of Kohner's assets on January 28th. Yet, Kohner hid evidence of the purported transfer from HP160 until he filed his Motion to Intervene on January 30[th], which was not received by counsel for HP160 until January 31. (d) Well before the purported transfers, Kohner had been sued by Petitioning Creditors. *See* A.R.S. §§ 44-1004(B)(4) and 44-1005. More tellingly, the trial court had recently scheduled a hearing on February 8, 2013, to consider HP160's

12

request for charging orders against Kohner's interests in multiple entities. Only when faced with the inevitability of the court transferring Kohner's economic interests to HP160 did Kohner engineer the transfers to Kohner's family members. As of February 8, 2013, HP160 would, but for the purported transfers by Kohner, have been entitled to issuance of the charging order against Kohner's membership interests in the multiple limited liability companies subject to HP160's pending applications. The actual intent to hinder, delay, and defraud HP160 as evidenced by Kohner's actions could not be clearer. (e) Kohner is attempting to transfer most if not all of Kohner's assets. *See* A.R.S. § 44-1004(B)(5). As importantly, the transfers include <u>all</u> of the entities involved in HP160's collection efforts. Any one of these badges of fraud would suffice to demonstrate Kohner's fraudulent intent under applicable Arizona law as well as 11 U.S.C. § 548. *See In re Turner*, Nos. NC–06–1263–SDR, NC–06–1336–SDR, 02–44874, 2007 WL 7238117, at *9 (B.A.P. 9th Cir. Sept. 18, 2007) (the presence of one or more of the "badges of fraud" provides evidence from which an inference of fraudulent intent may be drawn); *Necela, Inc.*, 2010 WL 382886, at *3 (the presence of a single badge of fraud is sufficient to prove actual intent) (citing *Gerow*, 192 Ariz. at 17). "When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent." *See Gerow*, 192 Ariz. at 17, 960 P.2d at 63. Such is the case here – the evidence of Kohner's fraudulent intent is voluminous, and Petitioning Creditors have a strong likelihood of success on the fraudulent transfer claims. In addition, the estate has virtually indefensible claims for preferences pursuant to 11 U.S.C. § 547 against both the Treese Trust and RLK Partnership.

HP160 obtained its Judgment against Kohner in April 2012. Citno and Nocit obtained their judgments in December 2012. Kohner has made no payments toward the outstanding balance owed on the Petitioning Creditors' judgments. In the case of HP160, that refusal to satisfy its judgment, in whole or even in part, forced HP160 to obtain and serve multiple writs of garnishment, and apply for

13

Case 2:13-bk-02159-DPC    Doc 3    Filed 02/19/13    Entered 02/19/13 15:15:48    Desc
Main Document    Page 13 of 16

charging orders against multiple entities in which Kohner owns interests. With regard to Nocit and Citno, the Debtors have not stepped forward and offered to pay anything toward the resolution of these judgments. The interests and the other assets conveyed to RLK Partnership and the Treese Trust constitute Petitioning Creditors and the other creditors of Kohner only likely source of payment on his claims.

Kohner, however, created a scheme where Kohner allegedly transferred his assets, including his interests in the companies identified by HP160, to RLK Partnership, which attempted to sell those interests to unsuspecting third parties. Under Arizona law, those third parties could have been viewed, but for entry of the TRO by the state court, as bona fide purchasers for value. "[W]hat constitutes a bona fide purchase? Three things must exist: (a) A purchase in good faith; (b) for value; and (c) without notice. Where a subsequent purchaser establishes a purchase for value, good faith and lack of notice are presumed, and the burden shifts to the party attacking the transfer to show bad faith and notice, actual or constructive." *Davis v. Kleindienst*, 64 Ariz. 251, 258, 169 P.2d 78, 82 (1946) (internal citation omitted). A bona fide purchaser can acquire rights *superior to the Judgment Creditor*. *See, e.g., Dempsey v. Oliver*, 93 Ariz. 238, 242, 379 P.2d 908, 910 (1963) (holding the rights of a bona fide purchaser in good faith, for value, with no actual or constructive notice were prior to those of the judgment creditor).

As noted, Petitioning Creditors and all other creditors of Kohner, except, of course, the Treese Trust and RLK Partnership, will suffer devastating further harm should Kohner be permitted to further transfer his remaining assets, if any, to RLK Partnership and the Treese Trust. Kohner, on the other hand, will suffer no prejudice because the estate of 11 U.S.C. § 541(a) consists of the assets owned by Kohner as of the date of the filing of the involuntary petition. Thus, any assets he might transfer post-petition, or the proceeds from any transfers, must be returned or paid to the trustee in

the Chapter 7 upon entry of the order for relief. Accordingly, prohibiting any transfers does not in any way prejudice Kohner.

III. **CONCLUSION**

Based on the foregoing, the evidence is overwhelmingly compelling that this estate will be best served by the immediate appointment of an interim trustee for the Gap Period, or, in the alternative, at a minimum, an order prohibiting Kohner from disposing of any of his assets during the GAP Period. Accordingly, Petitioning Creditors request that this Court grant this Motion and grant such other and further relief as it deems just, proper and equitable.

DATED this 19th day of February, 2013.

KUTAK ROCK LLP

By/s/ Joseph Wm. Kruchek
    Joseph Wm. Kruchek
    Jacob L. Sherrard
    Kelley E. Braden
    8601 North Scottsdale Road, Suite 300
    Scottsdale, AZ 85253-2742
    *Attorneys for RES-AZ HP160, LLC*

MOYES SELLERS & HENDRICKS

By/s/ Joshua T. Greer
    Keith L. Hendricks
    Joshua T. Greer
    1850 North Central Avenue, Suite 1100
    Phoenix, Arizona 85004
    *Attorneys for Citno and Nocit*

ORIGINAL filed electronically this 19th day of February, 2013, at:

Clerk of the United States Bankruptcy
For the District of Arizona

///

| | |
|---|---|
| 1 | COPIES mailed or sent via email as noted below this 19th day of February, 2013, to: |
| 2 | |
| 3 | / / / |
| 4 | Stephen A. Kohner (Mailed) |
|   | 301 W. Deer Valley Road |
| 5 | Suite 9 |
|   | Phoenix, AZ 85037 |
| 6 | |
| 7 | Dow Glenn Ostlund, Esq. via email to dgo@tblaw.com |
|   | TIFFANY & BOSCO PA |
| 8 | 2525 E. Camelback Rd., 3rd Floor |
|   | Phoenix, AZ 85016 |
| 9 | *Attorneys for RLK Family Limited* |
| 10 | *Partnership* |
| 11 | Jerry L. Cochran, Esq. via email to jcochran@jcochranlawfirmpc.com |
|   | COCHRAN LAW FIRM, P.C. |
| 12 | 2929 East Camelback Road, #118 |
|   | Phoenix, AZ 85016 |
| 13 | *Attorneys for the Sandra Treese Irrevocable Trust* |
| 14 | |
|   | George Winney, Esq. via email to gwinney@gblaw.com |
| 15 | James F. Polese, Esq. via email to jpolese@gblaw.com |
|   | GAMMAGE & BURNHAM |
| 16 | Two North Central Avenue, 15th Floor |
|   | Phoenix, AZ 85004 |
| 17 | *Attorneys for Stephen A. Kohner,* |
|   | *Patricia L. Kohner and SAK Family* |
| 18 | *Limited Partnership* |
| 19 | |
|   | Office of the US Trustee via U.S. regular mail |
| 20 | 230 North First Avenue |
|   | Suite 204 |
| 21 | Phoenix, AZ 85003-1706 |
| 22 | |
| 23 | /s/ Rebekah K. Poston |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |